**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**
**IN ADMIRALTY**

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF JOEL EDWARD WATSON AS OWNER OF THAT CERTAIN 2023 FOUNTAIN MODEL 38TE, U.S. COAST GUARD OFFICIAL NO. 1337134, HULL ID NO. FGQ8K230B232, PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION NO.: 1:23cv292 TBM-RPM |

**VERIFIED COMPLAINT FOR EXONERATION OR LIMITATION OF LIABILITY**

The Verified Complaint of Joel Edward Watson (verified personally via declaration pursuant to 28 U.S.C. §1746, as required under Local Admiralty Rule ("L.A.R.") A(6), *see* Exhibit 1), as owner of the 2023 Fountain Model 38TE, Hull ID No. FGQ8K230B232 (United States Coast Guard Official Number 1337134, issued June 30, 2023) (the "Vessel"), in a cause of exoneration from or limitation of liability, civil and maritime, pursuant to the Limitation of Shipowners' Liability Act (46 U.S.C. §30511; §30501 *et seq*.) alleges upon information and belief as follows:

**JURISDICTION & VENUE**

1.

This is a cause of action arising under the Court's admiralty and maritime jurisdiction, as further alleged in this Verified Complaint, pursuant to 28 U.S.C. §1333, 46 U.S.C. §30501 *et seq*.; Rule 9(h) of the Federal Rules of Civil Procedure and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules" cited in accordance with Local Admiralty Rules ("L.A.R.") Rule A(2)(a)); and this Court's L.A.R. Rule F.[1]

---

[1] *In re Nassau Bay Water Sports, Inc*., 62 F.3d 397 (5th Cir. 1995) ("[E]very court of appeals to have considered the

2.

At all times material hereto, Mr. Watson was, and now is, a person of full age and majority, and is a resident and domiciliary of Schriever, Louisiana; and was, at all material times hereinafter mentioned, the owner of the Vessel.

3.

At all times material hereto, the Vessel was a 2023 model year Fountain TE (Tournament Edition) 38 center-console vessel, with a fiberglass constructed hull with a dry-weight of approximately 15,600 lbs., powered by three (3) 400 horsepower Mercury outboard engines, with principal hull dimensions of 38 feet 4 inches in length, 10 foot 6-inch beam, 5 foot 8-inch depth, and owned and operated by Mr. Watson.

4.

Venue is proper in the United States District Court for the Southern District of Mississippi (Southern Division) pursuant to Supplemental Rule F(9) because the Vessel has not been attached or arrested with respect to any claim for which Mr. Watson seeks exoneration/limitation in these proceedings; nor (on information and belief) has suit been filed against Mr. Watson in any federal district; and the Vessel is currently located in the Southern District of Mississippi (Southern Division) (*see* ¶35, FN 6 *infra*) and the alleged/potential injuries and damages occurred in the Jourdan River, approximately 1.3 miles north of the Interstate 10 bridge, in the area of Kiln/Diamondhead, Mississippi, Hancock County, in the Southern District of Mississippi (Southern Division).

---

issue has held that, in light of its unambiguous language, the Act applies to pleasure craft."). *See also* 46 U.S.C. §30502 ("[T]his chapter (except section 30521 [regarding certain specified luggage items]) applies to seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters.")

NO:99490500.1

## LIMITATION VOYAGE AND CASUALTY

5.

Prior to and at all times hereinafter described, Mr. Watson exercised due diligence to make and to maintain the Vessel in all respects seaworthy; and at all times hereinafter described, the Vessel was, in fact, tight, staunch, strong, and fully and properly equipped, and in all respects seaworthy and fit and proper for the service and operations in which the Vessel was engaged at the time of the alleged exposures hereinafter described. In fact, the Vessel was in essentially brand new condition (with only approximately 10-20 total engine hours, inclusive of sea-trial time prior to delivery to Mr. Watson), as Mr. Watson had just taken possession of the Vessel on Thursday, April 27, 2023 (after having traded in an essentially identical 2019 model year Fountain 38TE vessel he previously owned); and had only used the Vessel during the day on Friday, April 28, 2023, prior to the April 30, 2023 date of the incident further described below.

6.

The circumstances giving rise to this Verified Complaint occurred on April 30, 2023. Mr. Watson and his wife, Sabrina Watson, had traveled earlier in the day to have brunch in Diamondhead, Mississippi and were on the return leg of that morning's voyage, navigating north in the Jourdan River in the area of Kiln, Hancock County, Mississippi, north of Interstate 10, returning to their camp in the Jourdan River Shores neighborhood in Kiln.

7.

Mr. Watson was at the helm operating the Vessel at all pertinent times and is an avid and experienced boater who is familiar with the Jourdan River and its environs, having owned a camp on the Jourdan River for approximately the last ten (10) years and having operated vessels in the Jourdan River of similar or identical size and power as the Vessel throughout that time.

3

8.

When the Vessel was approximately 1.3 miles north of the Interstate 10 overpass of the Jourdan River, just north of the confluence of Rotten Bayou with the Jourdan River, Mr. Watson was preparing to navigate through a curve in that section of the river, navigating at a safe cruising speed, toward the eastern side of the Jourdan River channel (i.e. to the Vessel's starboard side), maintaining a proper lookout from his position at the helm, and preparing to round the curve into a following relative straightaway section of the channel.

9.

As Mr. Watson prepared to round the curve just north of the mouth of Rotten Bayou, navigating near to the outer limit of the channel on the Vessel's starboard side, he saw another vessel heading south on the wrong side of the channel (i.e. the same side of the channel as his Vessel was on), in violation of (*inter alia*) Rules 5, 8, 9, and 14 of the Inland Navigation Rules (and potentially others to be determined);[2] as well as 22 Miss. Admin. Code Pt. 16, Ch. 9, R. 4.1,[3] Miss. Code.§ 59-21-83[4] and potentially other boating safety rules and regulations (collectively "Mississippi Safe Boating Regulations"). This vessel was later determined to be a 2021 model year 28-foot Bluewave Makaira 2800, Mississippi Registration No. MS 2722 CB, Hull ID No. PWV16925E021 ("Bluewave Vessel"), owned (on information and belief) by Herbert Stanford.

---

[2] *See* 33 C.F.R. §§83.05, 83.08, 83.09, and 83.14. *See also* 22 Miss. Admin. Code Pt. 16, Ch. 9, R. 9.1.

[3] "A person may not operate a vessel on the marine waters of the State of Mississippi in a reckless or negligent manner… [including] … [o]perating at an excessive speed within one hundred (100) feet of another occupied vessel."

[4] "No vessel shall be operated within this state in a reckless or negligent manner or at a rate of speed greater than is reasonable and prudent under the then existing circumstances." *See also* Miss. Code §59-21-117(3).

10.

In sudden peril of imminent collision, Mr. Watson tried to get the attention of the approaching Bluewave Vessel in his path, to signal for it to move toward its starboard (i.e. toward the west bank) and away from Mr. Watson's Vessel and path, while attempting to steer even further to his starboard/closer to the east bank/outer limit of the channel, despite draft constraints nearer to the bank, in compliance with and as required under the Inland Navigation Rules and Mississippi Safe Boating Regulations.

11.

However, in the following seconds, the operator of the Bluewave Vessel continued operating in violation of (*inter alia*) Inland Navigation Rules 5, 8, 9, and 14 (and potentially others to be determined) and Mississippi Safe Boating Regulations by maintaining an improper, reckless and negligent path; failing to keep as near as possible to the outer limit of the channel to its starboard side; failing to alter course to starboard so as to pass port-to-port on Mr. Watson's Vessel's port side; failing to take proper and timely action to avoid collision and to pass Mr. Watson's Vessel at a safe distance; and by steering the Bluewave Vessel further in the same (wrong) direction, i.e. to the Bluewave Vessel's port/closer to the east bank and toward Mr. Watson's path and Vessel, which was (correctly) navigating toward its starboard and the outer limit of the channel.

12.

Remaining in sudden peril of imminent collision, Mr. Watson tried to throttle down and throw the Vessel's engines into reverse.

13.

The Bluewave Vessel collided with Mr. Watson's Vessel, initially striking the bow of Mr. Watson's Vessel and then proceeding to scrape its starboard side down the port side of Mr. Watson's Vessel's hull, resulting in each of the two vessels being spun around, such that the Bluewave Vessel came to rest facing north (the opposite direction of its heading at the time of impact), and Mr. Watson's Vessel came to rest facing south (the opposite direction of its heading at the time of impact) ("the Collision").

14.

At all pertinent times leading up to the Collision, Mr. Watson was operating the Vessel in a safe and proper manner, at an appropriate speed, in compliance with the applicable Inland Rules of Navigation and Mississippi Safe Boating Regulations, and using all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision was imminent and taking appropriate actions to avoid collision in the prevailing circumstances made in ample time and with due regard to the observance of good seamanship.

15.

According to data displayed via the Global Positioning System ("GPS") aboard the Vessel and noted by Mr. Watson immediately after the Collision occurred, the location of the Collision was approximately 30°23'03.4", -89°24'10.9", and the Collision occurred just before approximately 1420 hours (2:20 PM Central Daylight Time).

16.

There were five (5) persons (three women and two men) and a dog aboard the Bluewave Vessel at or immediately before the time of the Collision (one of the male passengers jumped out of the Bluewave just prior to the Collision impact). On information and belief, the operator of

the Bluewave Vessel at the time of the Collision was one of the women, Madison Stanford, the daughter of Herbert Stanford, owner of the Bluewave Vessel.

17.

In the immediate moments following the Collision, after Mr. Watson gathered himself and was able to get up from the portside floor of the Vessel where he had been thrown during the Collision, he heard his engines running and immediately moved back to the console and turned off the keys to the engines, to ensure that any persons who might have been thrown into the water during the Collision would not be impacted by the running engines/propellers.

18.

At approximately 1424 hours (2:24 PM CDT), Mr. Watson called 911 from his mobile phone to report the incident, the GPS-indicated location, and to request emergency medical aid, as the persons on the Bluewave Vessel were yelling that one of the persons aboard the Bluewave Vessel was severely injured. The 911 operator transferred Mr. Watson's call to the Mississippi Department of Wildlife, Fisheries and Parks ("MS DWFP"), who indicated they would dispatch responders to the scene.

19.

Within approximately five (5) minutes of the Collision, two passing boats approaching from the south stopped to render assistance, as the driver of one of the boats was an emergency medical technician ("EMT"); and one of these boats took the three women from the Bluewave Vessel (including the reportedly severely injured passenger) back to shore.

20.

Mr. Watson and his wife were not aware of the condition of the reportedly severely injured passenger at the time the three women were taken from the Bluewave, and they did not become aware of the extent of the injuries until later in the evening on the day of the Collision.

21.

The two (2) remaining male passengers from the Bluewave Vessel remained at the scene with Mr. Watson and his wife.

22.

One of the male passengers, who was complaining of rib pain, was later taken from the scene, allegedly to be evaluated by EMTs, by another center-console boat that arrived from the south, with three males onboard (at least one of whom indicated he was a volunteer fireman).

23.

The other male passenger from the Bluewave Vessel remained with Mr. Watson and his wife (and joined them on the Vessel) until MS DWFP and Mississippi Department of Marine Resources ("MS DMR") responders arrived at the scene at approximately 1530 hours (3:30 PM CT), noting they had been delayed because they had to come from Biloxi.  The MS DWFP officers provided forms to Mr. and Mrs. Watson, and to the remaining Bluewave Vessel passenger, to provide written statements regarding the facts of the Collision.

24.

Mr. Watson was later taken back to shore by the MS DWFP boat for medical evaluation, as he had been complaining of back pain.  Mr. Watson voluntarily submitted to a field sobriety test, which he passed (as he does not drink alcohol or take any illicit narcotics); and likewise voluntarily submitted to be transported to the hospital to undergo a medically administered blood

alcohol content test, which on information and belief was negative for any alcohol/narcotic substances.

25.

After Mr. Watson was transported to shore, Mrs. Watson remained at the scene with a MS DWFP officer and with the lone remaining passenger from the Bluewave Vessel. This lone remaining passenger from the Bluewave Vessel later departed from the scene in a boat that had approached from the north with 4-5 people aboard. This boat approached the scene and indicated to the MS DWFP officer that they had come to collect personal effects from the Bluewave Vessel. The officer allowed one person from this boat to board the Bluewave Vessel; and then this boat departed, taking the lone remaining Bluewave Vessel passenger with them.

26.

Mrs. Watson remained at the scene and on the Vessel with the MS DWFP officer until approximately 1730 hours (5:30 PM CT). At some point before then, the MS DWFP boat that had taken Mr. Watson to shore returned to the scene with an MS DWFP agent and an MS DMR agent. Another MS DWFP agent had remained with Mr. Watson on shore and was transporting him from the hospital back to the Watsons' camp in Kiln.

27.

Mrs. Watson was informed that the Vessel and the Bluewave Vessel were to be impounded by MS DWFP for purposes of investigating the Collision. Mrs. Watson was initially told that Sea Tow would be towing both the Vessel and the Bluewave Vessel back to the dock for the MS DWFP to take possession; but the MS DWFP ultimately chose to navigate the Vessel back to the dock under its own power, although because the Vessel was stranded/aground in the shallows on the east side of the channel, Sea Tow had to tow the Vessel off the strand before it

could be navigated back to the dock. Mr. Watson (who had in the interim returned from the hospital) assisted MS DWFP agents in trailering the Vessel at the dock. On information and belief, the Bluewave Vessel was towed back to the dock by Sea Tow, thus terminating the voyage that had been underway at the time of the Collision.

28.

The Collision resulted in the tragic death of one passenger aboard the Bluewave Vessel, Savannah Grace Davis; and (on information and belief) alleged personal injuries to at least one of the Bluewave passengers, as well as substantial damage to the Bluewave Vessel and to the Vessel.

## ANTICIPATED CLAIMS SUBJECT TO EXONERATION/LIMITATION

29.

As a result of the Collision, Plaintiff Mr. Watson has been placed on notice of and/or is otherwise currently aware (as of the date of this Verified Complaint) of potential claims by the family of Ms. Davis (who is represented by counsel) relating to her death as a result of the Collision; potential personal injury claims by other persons/passengers on the Bluewave Vessel; and damages to the Bluewave Vessel, as follows:[5]

    i. Family & Wrongful Death Beneficiaries of Savannah Grace Davis; c/o Michael J. Shemper, PLLC, 140 Mayfair Road, Suite 1200, Hattiesburg, MS 39402; and James Robert Sullivan, Jr. Esq.

    ii. Marcus Bridgers (Bluewave passenger); 431 S. Main St. Poplarville, MS 39470-2825 and/or 410 W. Willie St., Poplarville, MS 39470.

    iii. Mr. Herbert Stanford, Jr. (registered owner of Bluewave Vessel); 1138 Stanford Lake Rd., Poplarville, MS 39470.

---

[5] In accordance with L.A.R. A(9) and F(3) Plaintiff will "use due diligence to provide direct notice to all known or reasonably anticipated claimants" in these proceedings.

      iv.    GEICO Marine Insurance Company (hull insurer of Bluewave Vessel); PO Box 5390, Fredericksburg, VA 22403-0390.

      a.    The amount of the claims for damages (constructive total loss) to the Bluewave Vessel has been indicated by GEICO to be $148,200.00; but GEICO has not indicated what share it is claiming as subrogated insurer versus what share (i.e. deductible) Mr. Stanford is claiming as title owner.

30.

Mr. Watson is, as of this date, unaware of any suits, petitions, demands, unsatisfied claims of liens, or liens against the Vessel in connection with the Collision. On information and belief and to the best of Mr. Watson's (and undersigned counsel's) knowledge, there are no actions and proceedings, in tort or contract or otherwise, pending at this time in respect of any demands relating to the Collision.

31.

Mr. Watson does not know the full nature nor the total amount of all claims that may potentially be made for injuries, losses or damages occurring as a result of Collision, but reasonably anticipates that the above-referenced potential claims in ¶29, as well as any additional suits and claims that may be asserted and prosecuted against him and/or the Vessel, will be in amounts exceeding the fair market value of the Vessel (which had no pending freight at the time of the Collision) immediately after the Collision and exceeding the total sum or sums for which Mr. Watson may be legally responsible or may be required to pay under the applicable statutes governing exoneration from or limitation of liability (46 U.S.C. §§30501 *et seq*).

**RIGHT TO EXONERATION, OR ALTERNATIVELY LIMITATION OF LIABILITY**

32.

The Collision, as well as any alleged injuries and any physical damage, personal injury, contingent losses and all other losses, damages, expenses, and costs resulting from the Collision, were not caused or contributed to by any act/failure to act, fault, negligence, unseaworthiness, or

lack of due care on the part of Mr. Watson, the Vessel, or any person for whom Mr. Watson was or is responsible; and Mr. Watson avers that he has valid and complete defenses to any such claims.  The Collision was an occurrence that could not have been reasonably anticipated; that was beyond his control; that was caused exclusively by the acts, fault, omissions and negligence of third parties for whom Mr. Watson is not responsible, including without limitation the owner and/or operator of the Bluewave Vessel, who are presumptively at fault under general maritime law based on violations of the Inland Rules and/or Mississippi Safe Boating Regulations (and potentially others to be determined upon further investigation of the facts); and for which Mr. Watson is not responsible, and he is accordingly entitled to a decree of exoneration from liability pursuant to Admiralty Rule F(2) because he is entirely free from fault.  *Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir. 1977).

33.

Moreover, Mr. Watson desires to contest his liability for any such claims, and in this regard avers that the Collision was caused exclusively by the acts, fault, omissions, and negligence of third parties for whom Mr. Watson is not responsible, including without limitation the owner and/or operator of the Bluewave Vessel, who are presumptively at fault under general maritime law based on violations of the Inland Rules and/or Mississippi Safe Boating Regulations; and potentially others to be determined upon further investigation of the facts).  Mr. Watson specifically reserves the right to amend and/or supplement this paragraph of his Complaint to specify the fault and negligence of any other party when the facts surrounding the Collision become more fully discovered and to prove those facts at the trial of this cause.

12

34.

Strictly in the alternative, the Collision as well as any alleged injuries and any physical damage, personal injury, contingent losses and all other losses, damages, expenses and costs resulting or arising in any way from the Collision, were caused by the acts/failures to act, fault, negligence unseaworthiness, or lack of due care of others and/or other vessels (including without limitation the owner/operator of the Bluewave Vessel who are presumptively at fault under general maritime law based on violations of the Inland Rules and/or Mississippi Safe Boating Regulations); and occurred without the privity or knowledge of Mr. Watson, such that Mr. Watson is entitled to a decree of exoneration; or (alternatively) limitation of any liability (which liability is denied) strictly to the fair market value of the Vessel (which had no pending freight) immediately after the Collision, pursuant to 46 U.S.C. §30523.

## **LIMITATION VALUE AND SECURITY**

35.

The value of Mr. Watson's interest in the Vessel and its appurtenances at the termination of the relevant voyage following the Collision, considering that the Collision caused damages to the Vessel, is currently estimated to be FOUR HUNDRED AND FORTY THOUSAND ($440,000.00) DOLLARS, taking into consideration reasonably anticipated (but unknown) costs of repairs as a result of damage caused by the Collision (subject to reduction if further[6] detailed repair cost analysis indicates a lower valuation viz. repairs), as confirmed by the visual survey and valuation affidavit of surveyor Jim Quackenbos (Qubed Limited, LC), and as further demonstrated by the purchase price of the Vessel, which Mr. Watson had just acquired earlier in

---

[6] The Vessel in its post-Collision condition has remained in the custody and possession of the MS DWFP within the Southern District of Mississippi since the date of the Collision, with only limited access provided to Mr. Watson/undersigned counsel for a visual-only survey conducted on May 10, 2023. *See* Exhibit 2; ¶37 *infra*.

13

the month of April 2023 at purchase price (Vessel and equipment) of $516,257.00.  *See* attached Exhibit 2 Declaration of Value by Jim Quackenbos of Qubed Limited, L.C.

36.

For the voyage underway at the time of the Collision, there is and was no pending freight, charter hire, or any other compensation paid, due, or owed in respect of the Vessel, as the Vessel was not carrying any freight or passengers, nor earning any amount for performance of any services, nor otherwise earning any funds under any contract(s) during the voyage underway at the time of the Collision.  Accordingly, the amount of any pending freight recovered or recoverable in respect of the Vessel for the voyage underway at the time of the Collision (pursuant to 46 U.S.C. §30523(a) and Supplemental Rule F(2)) is zero ($ 0) dollars.

37.

Subject to any further appraisal of his interest in the Vessel, Mr. Watson herewith deposits with the Honorable Court, as security for the benefit of all potential claimants, and for costs, an *Ad Interim* Stipulation for Value (*see* attached Exhibit 3) and Letter of Undertaking ("LOU," *see* attached Exhibit 4) issued by his insurer (American Modern Property and Casualty Insurance Company, "AMIG") in the sum of $440,000.00, said sum representing the total value of his interest in the Vessel and its appurtenances (with no pending freight), less preliminarily (but unknown) estimated repair costs, following the Collision, plus interest at six percent (6 %) *per annum* from the date of said Stipulation and LOU, and for costs as may be ordered by the Court (*see* attached Exhibit 4, LOU).[7]  This security is deposited contemporaneously with the

---

[7] Mr. Watson reserves the right, pursuant to Supplemental Rule F(7) and 46 U.S.C. §30529(b)(1)(B), to seek a reduction in the value of the LOU and *ad interim* stipulation filed as security for, and in support of, this Verified Complaint for Limitation of Liability, to the extent the post-Collision value of the Vessel may be found to be lower than the value provided in Exhibit 2, Declaration of Value by Jim Quackenbos of Qubed Limited, L.C. after further and more detailed analysis/repair cost estimations (if any).

filing of this Verified Complaint in accordance with L.A.R. F(1).  Further, in addition to the above-referenced LOU/ *Ad Interim* Stipulation for Value, Mr. Watson and AMIG are prepared to provide an additional stipulation/supplemental LOU for any amount in excess of (or less than) the *Ad Interim* Stipulation as may be ascertained and determined to be necessary under the orders of this Court, and as provided by the laws of the United States of America and the Federal Rules of Civil Procedure, including the Supplemental Rules, and/or the Local Rules, Local Admiralty Rules, and practices of this Honorable Court.

38.

Mr. Watson hereby claims (pursuant to Supplemental Rule F(2) and 46 United States Code Title 46, Chapter 305 - Exoneration and Limitation of Liability), and is entitled to, exoneration from liability for any and all injuries, deaths, losses, or damages occurring as a result of the Collision and for any and all claims therefor occurring as a result of the Collision.  Mr. Watson alleges that he has valid and complete defenses to any such claims on the facts and on the law.

39.

Alternatively, Mr. Watson, without admitting and affirmatively denying all liability, claims the benefit of the limitation of liability provided for at 46 U.S.C. §§ 30501 *et seq.*, and Supplemental Rule F/L.A.R. F, and the various statutes/rules supplemental thereto and amendatory thereof, and to that end Mr. Watson herewith deposits with the Honorable Court, as security for benefit of potential claimants, the aforementioned *Ad Interim* Stipulation and LOU.

40.

Should it later appear that Mr. Watson is or may be liable (which is denied) and that the amount or value of his interest in the Vessel, as aforesaid, is not sufficient to pay all losses in

full, then all claimants shall be made to share *pro rata* in the aforesaid sum represented by the LOU, saving to all such claimants any rights of priority they may have as ordered by this Honorable Court, or as provided by the aforesaid statutes, by the Federal Rules of Civil Procedure, including the Supplemental Rules, the general maritime law, and by the Local Rules, Local Admiralty Rules, and practices of this Honorable Court.

### TIMELINESS, MONITION PERIOD; INJUNCTION

41.

This Complaint is filed within six (6) months from the date of the Collision, and thus likewise within six (6) months of any potential first written notice of any reasonable possibility of any limitable claim that might exceed the value of the Vessel (pursuant to Supplemental Rule F(1) and 46 U.S.C. §30529(a)).

42.

Mr. Watson brings this action to preserve all rights under the Shipowner's Limitation of Liability Act, and so that all claims by all interested parties can be promptly and fairly adjudicated in a single forum, consistent with procedures established by Congress under 46 U.S.C. §§30501 *et seq*., the Federal Rules of Civil Procedure, the Supplemental Rules, the Local Admiralty Rules, and this Court. Contemporaneous with the filing of this Verified Complaint, Mr. Watson seeks (by Motions pursuant to L.A.R. F(2) and Local Uniform Civil Rule 7) an order from this Court approving the *Ad Interim* Stipulation and LOU and establishing a period of time within which any interested party may file a claim for damages so that the final adjudication of this matter may proceed expeditiously under the Court's supervision.

43.

Further, Mr. Watson seeks (by the contemporaneously filed motion noted above) an order from this Honorable Court enjoining the further prosecution of any action or proceeding against

Mr. Watson, the Vessel or Mr. Watson's property with respect to any claim(s) relating to or arising out of the Collision that are subject to limitation in this action (pursuant to Supplemental Rule F(3)) and further ordering that all claims and proceedings against Mr. Watson (if any) related to the Collision shall cease (pursuant to 46 U.S.C. §30529(c)).

44.

All and singular the premises are true and within the jurisdiction of the United States and of this Honorable Court as an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

45.

Mr. Watson reserves the right to plead all applicable affirmative defenses, claims, cross-claims and counterclaims against any claimant, including but not limited to the right to plead set off, the right to plead comparative fault, the right to plead compromise and settlement, the right to plead that the incident was unavoidable, the right to plead that the Collision resulted from violations of law or permits by other parties or particular claimants, the right to plead that the particular claimants have no right to pursue claims and/or no viable cause of action, and the right to file cross-claims and/or third-party actions for damages or for indemnity or contribution (under general maritime law or otherwise) against all persons and entities that may be legally responsible for the Collision.

46.

**WHEREFORE, Plaintiff Mr. Watson prays that:**

1. This Honorable Court issue an Order (as per Plaintiff's *Ex Parte* Motion filed contemporaneously herewith seeking an order in substantially the same form provided by the Court's Admiralty Form No. 24 as provided on the Courts' Website and pursuant to

L.A.R. F(2)) approving the *Ad Interim* Stipulation for Value executed by Mr. Watson and AMIG, and LOU issued by AMIG as security therefor, and deposited with the Court by Mr. Watson as security for the amount or value of its interest in the Vessel, pursuant to Supplemental Rule F(1) and 46 U.S.C. §30529(b)(1);

2. This Court issue a Notice (as per Plaintiff's *Ex Parte* Motion filed contemporaneously herewith in substantially the same form provided by the Court's Admiralty Forms No. 25 and 26 as provided on the Courts' Website and pursuant to L.A.R. F(3)) to all persons, firms or corporations asserting claims of any sort or nature whatsoever for any and all losses, damages, injuries or destruction with respect to which Mr. Watson seeks exoneration from and/or limitation of liability, admonishing them to file their respective claims with the Clerk of this Court and to serve on the attorneys for Mr. Watson a copy thereof on or before a date to be named in the Notice; and that if any claimant desires to contest either the right to exoneration from or the right to limitation of liability, such person shall file and serve on the attorneys for Mr. Watson an answer to this Complaint on or before the said date, unless his or her claim has included an answer, so designated;

3. This Court issue an Order (as per Plaintiff's *Ex Parte* Motion filed contemporaneously herewith in substantially the same form provided by the Court's Admiralty Form No. 24 as provided on the Courts' Website) enjoining (pursuant to 46 U.S.C. §30529(c) and Supplemental Rule F(3)) the further prosecution of any and all actions, suits, and proceedings already commenced and the commencement or prosecution thereafter of any and all actions, suits or proceedings, of any nature or description whatsoever in any jurisdiction against Mr. Watson, his insurers/AMIG, and/or against the Vessel, whether *in rem*, *in personam*, or by attachment of the Vessel or any other property of Mr. Watson,

with respect to any claims for which Mr. Watson seeks limitation, including any claims arising out of or relating in any way to any loss, damage, injuries or destruction resulting from the Collision; and that any such claims may not be filed except in this action;

4. This Court adjudge that Mr. Watson is not liable to any extent whatsoever for, and is completely exonerated from, liability for any injuries, losses or damages occurring as a result of the Collision, or for any claims therefor in any way arising out of or resulting from the Collision;

5. Strictly in the alternative, if Mr. Watson shall be adjudged liable (which is vehemently denied) in any amount whatsoever to any claimants, then that such liability be limited to the value of Mr. Watson's interest in the Vessel of $440,000.00, to be divided *pro rata* among such claimants in respect of the LOU approved by the Court; and that judgment be entered discharging Mr. Watson therefrom upon the surrender of such interest, and that the money surrendered, paid or secured to be paid, as aforesaid, be divided *pro rata* according to the hereinabove mentioned statutes among such claimants as may duly prove and claim in accordance with the provisions of the Order hereinabove prayed for, saving to all parties any priorities to which they may be legally entitled, and that a decree may be entered, discharging Mr. Watson from all further liability; and

6. If any claimant who shall have filed a claim shall also file an exception controverting the value of the Vessel, as alleged herein, this Court shall cause due appraisal to be had of the value of the said Vessel following the Collision and of the value of Mr. Watson's interest therein, and in which event this Court shall enter an Order for the filing of an amended *Ad Interim* stipulation and LOU for the aggregate value, or other security, as to be determined by the Court (if necessary), of Mr. Watson's interest in the Vessel;

7. Mr. Watson may have such other, further, or different relief as may be just in the circumstances, at law, in admiralty and/or in equity.

This the 26th day of October, 2023.

          Respectfully submitted,

          JOEL E. WATSON, AS OWNER OF THE VESSEL

          By Its Attorneys,

          BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

          By: *s/ J. Carter Thompson, Jr.*
               J. CARTER THOMPSON, JR.

J. Carter Thompson, Jr. (MS Bar No. 8195)
cthompson@bakerdonelson.com
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC
MAILING:  Post Office Box 14167
Jackson, Mississippi  39236-416763
PHYSICAL:  One Eastover Center
100 Vision Center, Suite 400
Jackson, MS  39211-6391
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

OF COUNSEL:

Christopher M. Hannan (LA Bar No. 31765) (*pro hac vice* to be submitted)
Lauren E. Burk (LA Bar No. 34470) (*pro hac vice* to be submitted)
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
Facsimile: (504) 636-4000
channan@bakerdonelson.com
lburk@bakerdonelson.com

NO:99490500.1